UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOEY J. ROBERTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:16-CV-1604-SNLJ |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

The Commissioner of the Social Security Administration denied plaintiff Joey Roberts's application for Disability Insurance Benefits under Title II of the Social Security Act. Roberts now seeks judicial review (#13). The Commissioner opposes the motion (#18), and the issue is ripe. The Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed.

**I.       Procedural History**

Roberts's application was denied at the initial determination level. He then appeared before an Administrative Law Judge ("ALJ"). The ALJ found that Roberts is not disabled as defined by the Act because he can perform work that exists in substantial numbers in the national economy. Roberts exhausted his administrative remedies and now appeals that decision.

1

## II. Disability Determination—Five Steps

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled if he is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." *Id.* § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential evaluation process when evaluating whether a claimant has a disability. 20 C.F.R. § 416.920; *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner considers a claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. §§ 416.920(c), 416.921(a).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the claimant's ability to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. § 416.945(a)(1). If a claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden to show that the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. If the claimant cannot make an

adjustment to other work, the Commissioner finds the claimant disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

**III.    The ALJ's Decision**

At Step One, the ALJ found that Roberts met the insured status requirements through December 31, 2017, and had not engaged in substantial gainful activity since August 28, 2013. At Step Two, the ALJ found that Roberts suffers from two severe physical impairments: osteoarthritis and vision loss. The ALJ found that Roberts's obesity was nonsevere and that his mental impairments (stemming from depression) are nonsevere. At Step Three, the ALJ concluded that Roberts does not have an impairment that meets or equals one of the presumptively disabling impairments listed in the regulations.

> Next, the ALJ assessed Roberts's RFC. The ALJ found that Roberts
>
> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could not work at unprotected heights, around moving/mechanical parts, or other such hazards; he could not perform work that involves the operation of heavy equipment or machinery; he could frequently engage in overhead reaching, pushing, and pulling with the left upper extremity; he could not climb ladders, ropes, or scaffolds; he could occasionally stoop, bend, and crawl; and the claimant could not perform work for which near acuity, that is clarity at 20 inches or less, is an essential function.

(Tr. 20). At Step Four, the ALJ relied on vocational expert ("VE") testimony and found that Roberts cannot perform any past relevant work. At Step Five, the ALJ analyzed whether Roberts can successfully adjust to other work and concluded, based on the

4

testimony of a vocational expert ("VE"), that Roberts is able to perform work as a hand packer or cleaner. The ALJ then found that these jobs exist in significant numbers in the national economy and concluded that Roberts is not disabled.

## IV. Standard of Review

The Court must affirm the Commissioner's decision if the decision is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Roberts v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992).

## V. Discussion

Roberts claims the ALJ committed two errors. First, he claims the ALJ erred in finding he could perform the jobs of hand packer and cleaner because those jobs require bilateral frequent reaching, and the ALJ found plaintiff was limited to frequent reaching with the left upper extremity. Second, he claims the ALJ erred in giving only "little

5

weight" to the opinion of plaintiff's treating nurse practitioner. Each claim is discussed in turn below.

### A. Residual Functional Capacity and Job Performance

The responsibility for determining a claimant's residual functional capacity, or RFC, lies with the ALJ. *See* 20 C.F.R. § 404.1546(c); *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015). Here, the ALJ limited plaintiff to light work, but restricted him from working at unprotected heights and around moving/mechanical parts. He also restricted him from operating heavy equipment or machinery, limited him to only frequently overhead reaching, pushing, and pulling with his left upper extremity; and restricted him from climbing ladders, ropes, or scaffolds. Finally, the ALJ limited plaintiff to only occasional stooping, bending, and crawling, and restricted him from performing work for which near-vision acuity, defined as clarity at 20 inches or less, is an essential function.

The ALJ then determined that plaintiff could perform the jobs of hand packer and cleaner. Plaintiff claims that because those jobs require frequent bilateral reaching, that those job requirements are inconsistent with the ALJ's finding of residual capacity limiting plaintiff to frequent reaching with the left upper extremity. Plaintiff notes that the "ALJ offered no explanation as to why he entered a finding of the plaintiff's reaching ability only for the left upper extremity." (#13 at 13.)

A claimant's RFC is the most claimant can do despite the combined effect of his credible limitations. *See* 20 C.F.R. § 404.1545. The RFC here says plaintiff can perform frequent reaching with his left arm, but no more reaching than frequent. The RFC is silent as to plaintiff's right arm because the ALJ included only credible limitations in the

RFC. The ALJ did not find that plaintiff had any limitations with his right arm, so plaintiff is able to perform any frequency of reaches with his right arm --- including frequent reaching required by jobs such as hand packer or cleaner. Plaintiff's left arm/shoulder is the only arm/shoulder with evidence of any pain or problem.

Plaintiff states that the record was "muddled" by the manner in which the ALJ's hypothetical question was posed to the vocational expert. Plaintiff argues that the two-part "light work" hypothetical question was unclear as to the visual acuity limitation excluding jobs requiring near acuity at 20" or less. The Court disagrees. When read as a whole, the administrative hearing transcript shows that there was no confusion. In the first hypothetical, the ALJ limited the hypothetical claimant to light work and restricted him from heights, moving parts, operating heavy machinery; the ALJ also limited the hypothetical claimant to frequent overhead reaching, pushing, and pulling with the left upper extremity. (Tr. 20, 54-55.) In response, the vocational expert testified such a claimant could perform jobs such as hand packer and cleaner.

The second hypothetical built on the first hypothetical. The ALJ asked the vocational expert to

> Assume that the individual can still perform at the light level with the same restrictions as in the first hypothetical, but with the following additional restrictions, no ladders, ropes or scaffolds, occasional stooping, bending and crawling, no work for which near acuity, that is clarity at 20" or less is an essential function.

(Tr. 56.) The ALJ then started to include an additional limitation and stopped herself stating, "and the --- no. Let me make an edit here. I'm going to take the limitation out of there. All right. So, with just those limitations." (*Id.*)

7

Plaintiff asserts that the vocational expert would have understood that the ALJ was removing the limitation regarding visual acuity, but it is apparent that the expert understood that the ALJ had started to include an additional, unspoken limitation and stopped herself. This is confirmed by the expert's response to the third hypothetical, which included all the limitations of the second hypothetical but added a sedentary limitation. The expert responded that "positions at a sedentary level" would require the claimant to "see small," confirming that the expert understood the visual acuity restriction was applied to both the second and third hypothetical.

The first and second hypothetical correctly reflected the RFC finding, and the ALJ properly relied on the vocational expert's testimony that there were jobs that plaintiff could still perform. Substantial evidence thus supports the ALJ's finding.

**B.     Disregard of Treating Nurse Practitioner's Opinions**

Next, plaintiff claims the ALJ erred by giving only "little weight" to the opinion of Nurse Practitioner Shawna Moore, who opined that plaintiff had very limiting physical and mental impairments.

NP Moore completed a Medical Source Statement – Physical in which she opined plaintiff could stand only one hour out of an eight-hour day, 30 minutes at a time, and that he should lift less than 10 pounds. She noted plaintiff had positive blood tests that indicated rheumatoid arthritis. The ALJ stated

> I give Ms. Moore's opinion little weight as it is not supported by objective evidence. While Ms. Moore opined the claimant could only stand for a total of one hour and sit for a total of one hour, the claimant's own testimony did not indicate such extreme limitations. Additionally, based on Ms. Moore's limitations, the claimant would be laying down for six hours

8

> in an eight-hour day. Furthermore, Ms. Moore attributed the claimant's limitations to "blood tests that indicated he had rheumatoid arthritis;" however, the claimant only tested positive for FANA.

(Tr. 25.) Plaintiff argues that the ALJ has failed to support his reasoning behind the decision to reject NP Moore's medical opinion. Plaintiff argues, for example, that his testimony did support the "extreme limitations" in that he testified that he can only stand up to wash dishes for 15 minutes. (Tr. 44.)

The Court looks to all of the ALJ's analysis, not just a summary or conclusion. *See Wiese v. Astrue*, 552 F.3d 728, 733-34 (8th Cir. 2009). The ALJ was not required to specifically point out which of plaintiff's allegations she found incredible. *See id.* The ALJ devoted several pages to analyzing inconsistencies among Moore's report, the consultative examiner's report, and plaintiff's testimony. Moore saw plaintiff only five times before completing the physical medical source statement indicating that plaintiff had the most extreme limitation in every category on the statement. She opined that plaintiff could not lift even five pounds occasionally, nor could he sit, stand, or walk for more than 1 hour total in a day, or 30 minutes continually. She stated he could reach, handle, finger, feel, climb, balance, stoop, kneel, or crouch "less than occasionally," and would need to recline, assume a supine position, and prop his legs for up to 30 minutes, one to three times per day. (Tr. 25, 301-03.)

The ALJ explained that the treatment notes, objective evidence, relatively conservative treatment, and plaintiff's activities of daily living were inconsistent with the extent of these limitations. Multiple clinical tests revealed only small meningiomas, generally unremarkable findings, mild- to-moderate cervical spondylosis, minimal

stenosis, and some paracentral vision loss. (Tr. 22, 217, 226, 231, 236, 238-42.) In addition, the consultative examiner, Dr. John Demorlis, M.D., found plaintiff had normal ranges of motion in all of his joints, and had normal arm, leg, and grip strength. (Tr. 24, 275-79, 281.) Further, plaintiff had no sensory deficits, and he displayed a full strength grip, could do a full squat, could walk on his toes and heels, and had normal reflexes and normal gate. (Tr. 23, 275, 280-81.) The doctor also noted that plaintiff stood and sat for longer than he claimed he could and appeared "rather muscular," exhibited no atrophy, and had callouses on his hands. (Tr. 24, 279.) Dr. Demorlis opined that plaintiff could work but that he had to avoid heights, driving, and machinery.

NP Moore's own notes further contradicted her report. The notes indicated that plaintiff's osteoarthritis, blood pressure, and cholesterol were being managed with medication and that over-the-counter pain medication relieved his swollen toes and migraines.

In addition, plaintiff's testimony regarding his activities of daily living indicated his impairments were not as limited as he asserted or as NP Moore opined. (Tr. 26.) The ALJ summarized

> I have also considered the claimant's activities of daily living. The claimant reported he watched television, occasionally mowed the lawn, drove his wife to and from work, and he went outside daily. The claimant also reported he had minor problems with dressing himself although he could bathe and feed himself…. While the claimant admitted to few activities of daily living, no medical doctor diagnosed any medical reason for the level of inactivity the claimant alleges or the severity of the symptoms the claimant alleges.

10

(Tr. 26.) The record instead supports that the reason for plaintiff's level of inactivity because plaintiff's wife takes care of the shopping, cooking, and cleaning. (Tr. 162.) Plaintiff says that he is bored because he cannot see to do things, but he watches television "most of the time" and can see well enough to drive his wife to work at 7:30 a.m. and then to pick his wife up from work at 3:00 p.m. (Tr. 163, 159.) His own application states that his conditions affect lifting, squatting, bending, reaching, kneeling, stair climbing, and using hands. But he notably did not circle that his conditions affect standing, walking, sitting, talking, hearing, seeing, memory, competing tasks, concentration, understanding, following instructions, or getting along with others. (Tr. 164.)

As the ALJ further noted, although plaintiff complained that an old collarbone injury results in severe pain, he takes only aspirin to manage that pain. (Tr. 26.) "Additionally, the claimant testified he stopped taking medications for his conditions because his body refused them and caused his mouth and tongue to swell. However, he never returned for care with Ms. Moore to try other medications for his conditions." (*Id.*) Finally, the ALJ noted that although "claimant testified he lifted and carried 75 to 80 pounds while building furniture…he also stated that he only stopped working there because of his vision problems." (*Id.*)

The ALJ noted that the limitations ascribed by NP Moore appeared to be based on blood tests that indicated plaintiff had rheumatoid arthritis. However, the ALJ noted, the plaintiff only tested borderline positive for fluorescent antinuclear antibodies ("FANA"). Plaintiff suggests that the ALJ substituted her own interpretation of the plaintiff's blood

tests with regard to plaintiff's rheumatoid arthritis diagnosis. Although the Commissioner does not directly address this issue, it is apparent that the ALJ's statements about plaintiff's FANA levels were merely part of a discussion regarding the reason Moore might have ascribed such extreme limitations to plaintiff. Specifically, the ALJ drew no specific conclusions from the FANA results, but she did observe that, despite the "borderline significant FANA,"

> no further specific antibody testing, such as a complete ANA profile was performed. Additionally, the claimant's ESR was normal, and the claimant's CRP was normal….

(Tr. 25-26.) Thus, at the conclusion of a paragraph covering the reasons for Moore's opinions that plaintiff would need to lie down for six hours of an eight-hour day, the ALJ concluded "[t]herefore, there is no evidence in the record as a whole to support the severe limitations Ms. Moore assessed." (Tr. 26.)

Plaintiff also suggests that the ALJ improperly rejected NP Moore's opinion that plaintiff had severe mental impairments that would prevent employment, such as that he had poor ability to interact with supervisors, respond appropriately to criticism from supervisors, and deal with work stresses. (#13 at 19-20.) Plaintiff notes that he tested positive for depression and that his mood was anxious and speech was pressured and rapid in April 2014. Further, he notes evidence that his condition improved while on Prozac. Plaintiff states that the reasons the ALJ cited for her decision to discredit NP Moore's mental assessment actually "seem to support the assessment rather than detract from it." (#13 at 20.) Plaintiff then cites the ALJ's statement that Moore

12

> reported in the medical source statement that the claimant was unable to
> remember a grocery list although the claimant reported in his function
> report that he did not shop.

(Tr. 18.) Plaintiff's interpretation of this --- that the inability to remember a grocery list supports that plaintiff does not shop --- is in apparent contrast to the ALJ's implication, which was that the statement that plaintiff cannot remember a grocery list is not relevant because plaintiff does not shop: how would he know whether he can remember a grocery list or not? There is no indication in the record that plaintiff does not shop because he cannot remember a grocery list.

Again, plaintiff mischaracterizes the whole of the ALJ's decision by cherry-picking statements. *See Wiese*, 552 F.3d at 733-34. The ALJ's analysis includes ample discussion of plaintiff's mental health evidence and reasons to give little weight to NP Moore's opinion. The ALJ noted that

- Regarding making occupational adjustments, NP Moore "opined the claimant was poor in three of 11 areas although he was fair in eight of 11 areas." (Tr. 18.) Moore "reported the claimant was dealing with a mood disorder that limited his ability to interact with others in a calm demeanor, and stressors would worsen this." (Tr. 18.)

- Regarding making performance adjustments, Moore "opined the claimant was poor in one of three areas although he was fair in two of three areas. Ms. Moore reported the claimant was intellectually intact although his memory, especially short-term, was impaired." (Tr. 18.)

- Regarding making personal-social adjustments, Moore opined that the "claimant was poor in two of five areas although he was fair in two of five areas and good in one of five areas. Ms. Moore reported the claimant had not been able to tolerate interactions with others, and this would limit his ability to produce work. She also stated this would cause his attendance to be sporadic." (Tr. 18.)

- "Finally, Ms. Moore opined the claimant, on average, would miss two

or more days of work a month, although she offered no explanation why." (Tr. 18.)

The ALJ then contrasted those statements with the fact that although Moore referred plaintiff to counseling, he did not attend counseling until one month before the May 2015 hearing. He thus had no mental health treatment at all between April 2014 and April 2015. Although plaintiff thought the Prozac helped his condition, he did not continue to take it, and he did not return to Moore to try psychotropic drugs that would not cause the "mouth swelling" Prozac and a substitute for Prozac had caused. (Tr. 19.)

The ALJ further stated that she made her determination based on the four broad functional areas set out in the disability regulations for evaluating mental disorders, known as the "paragraph B criteria." The evidence the ALJ listed in her analysis of those criteria included that

- Plaintiff lived in a house with family, that he visited his father occasionally and spoke to his sons on the phone, that he had no problems getting along with family, friends, and others.

- Although plaintiff needed reminders to do certain things and could only pay attention for about 10 minutes, he could watch television, drive his wife to and from work, mow the lawn, and finish the things he started.

- Plaintiff reported he had no problems handling stress or changes in routine.

- Plaintiff had no episodes of decompensation.

(Tr. 19.)

Looking at the entirety of the ALJ's decision, there is ample basis for the ALJ to have given less weight to NP Moore's opinions because the limitations in her assessment did not reflect the overall medical evidence. The above inconsistencies undermined the

14

validity of her opinion and diminished the weight it was due. *See Toland v. Colvin*, 761 F.3d 931, 935–36 (8th Cir. 2014).

**VI. Conclusion**

Because the ALJ's decision is supported by substantial evidence on the record as a whole, this Court must affirm the decision, even if there is evidence that supports the opposite conclusion. *See Weikert*, 977 F.2d at 1252.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is affirmed.


So ordered this   22nd   day of March, 2018

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE